IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
March 6, 2001 Session

## STATE OF TENNESSEE v. MARCUS DUVALLE HURSTON

**Appeal as of Right from the Circuit Court for Madison County
No. 99-682   Roy B. Morgan, Jr., Judge**

---

**No. W2000-01721-CCA-R3-CD  - Filed August 13, 2001**

---

The appellant, Marcus Duvalle Hurston, was convicted by a jury in the Madison County Circuit Court of one count of aggravated assault. The trial court sentenced the appellant as a Range II multiple offender to eight years incarceration in the Tennessee Department of Correction. On appeal, the appellant raises the following issue for our review: whether the evidence was sufficient to sustain his conviction of aggravated assault. Upon review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA McGEE OGLE, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and DAVID H. WELLES, J., joined.

J. Colin Morris, Jackson, Tennessee, for the appellant, Marcus Duvalle Hurston.

Paul G. Summers, Attorney General and Reporter; Kim R. Helper, Assistant Attorney General; James C. (Jerry) Woodall, District Attorney General; and Jody S. Pickens, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I.  Factual Background

On May 24, 1999, the appellant, Marcus Duvalle Hurston, went to the residence of James Holmes, the current boyfriend of the appellant's ex-girlfriend, Tywone Mann. Holmes and Mann were sitting outside the house on the porch smoking marijuana. The appellant explained that he wanted to ask Mann to return his leather jacket that she had gotten from him while they were dating. Heated words were exchanged by the parties, and Holmes entered the house to ask his

brother, William S. Cherry, to come outside. Holmes did so because he was afraid that the situation would escalate into a fight.[1]

While Holmes was inside the house, an altercation between the appellant and Mann ensued. The appellant struck Mann in the head. When Holmes came out of the house, he observed Mann holding her head and crying. In retaliation, Holmes picked up a large brick and threw it at the windshield of the appellant's maroon Chevrolet Blazer. At trial, Mann testified that

> [At that point,] I seen [the appellant] trying to leave. . . .When I looked up, Mr. Holmes was hitting [the appellant] with the door or throwing him into the truck or something.

> . . . . [Holmes] was at the truck grabbing [the appellant,] throwing him on the truck. . . . James was throwing him on the truck like-- with the door.

Moreover, Holmes testified that, "[The appellant] was going back to the truck. . . . He was getting in the truck. He was getting out, but I ran up there and started closing the door on him. . . . That's when we started fighting."

Cherry soon joined in the fray. The fight ended when the trio noticed that Holmes was bleeding from several stab wounds. Neither Holmes nor Cherry actually saw the appellant with a knife. However, both men denied possessing a weapon during the fight. Mann testified that she "believed" she saw the butt of a knife on the appellant but did not describe the exact location of the knife. The appellant also received some stab wounds on his hand and lip.

A jury in the Madison County Circuit Court convicted the appellant of one count of aggravated assault, a class C felony. The trial court sentenced the appellant as a Range II multiple offender to eight years incarceration in the Tennessee Department of Correction. On appeal, the appellant contests the sufficiency of the evidence supporting his conviction.

## II. Analysis

In determining whether a conviction rests upon sufficient evidence, this court will grant the State the strongest legitimate view of the evidence adduced at trial and all reasonable inferences which may be drawn from that evidence. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, the trier of fact, not this court, must resolve questions concerning witness credibility and the weight and value to be given the evidence and must also resolve all factual issues raised by the evidence. State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

Additionally, because the appellant's conviction removes the presumption of his innocence and replaces it, on appeal, with a presumption of his guilt, the appellant, therefore, bears

---

[1] The various parties are referred to in the following ways in the record: Marcus Ducalle Hurston, Jack Holmes, Mark Holmes, Taiwan Mann, Tywaun Mann, Shaun Cherry, and Shuan Cherry. We have used the spellings contained in the indictments.

the burden of demonstrating to this court why the evidence will not support the jury's findings. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). To this end, the appellant must establish that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e). Moreover, this court may not overturn a jury conviction unless the evidence preponderates against the appellant's guilt and in favor of his innocence. Jones v. State, 553 S.W.2d 920, 921-922 (Tenn. Crim. App. 1977).

In order to sustain the appellant's conviction of aggravated assault, the State was required to prove at trial that the appellant

> [i]ntentionally or knowingly commit[ted] an assault as defined in [Tenn. Code Ann.] § 39-13-101 and:
> > (A) Cause[d] serious bodily injury to another; or
> > (B) Use[d] or display[ed] a deadly weapon.

Tenn. Code Ann. § 39-13-102(a)(1) (1997). A person commits assault when that person intentionally, knowingly, or recklessly causes bodily injury to another, or causes another to reasonably fear imminent bodily injury, or causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative. Tenn. Code Ann. § 39-13-101(a) (1997). Specifically, the indictment charging the appellant with the instant offense stated that the appellant "did intentionally and/or knowingly cause bodily injury to JAMES HOLMES by the use of a deadly weapon, to wit: a knife, a more particular description of which to the Grand Jurors aforesaid is unknown."

The proof adduced by the State at trial demonstrates that the appellant, Holmes, and Cherry engaged in a fight. Neither Holmes nor Cherry was armed with a weapon; specifically, both Holmes and Cherry testified that they did not possess a knife during the fight. Moreover, Mann testified that she believed that she had seen the butt of a knife on the person of the appellant prior to the fight. During the fray, in which only the appellant, Holmes, and Cherry participated, the victim, Holmes, was stabbed six times. Holmes was hospitalized for treatment of his injuries, and he testified that he still bears visible scars as a result of the stabbing. From this evidence, a jury could have reasonably found that the appellant committed an aggravated assault upon Holmes. See State v. James Wagner, No. 03C01-9304-CR-00111, 1994 WL 137909, at *2 (Tenn. Crim. App. at Knoxville, April 20, 1994).

However, the appellant contends that the jury erred in not finding that he stabbed Holmes in self-defense. Self-defense is essentially a fact question for the jury. State v. Clifton, 880 S.W.2d 737, 743 (Tenn. Crim. App. 1994); State v. Ivy, 868 S.W.2d 724, 727 (Tenn. Crim. App. 1993). As such, "in the context of judicial review of the jury verdict, in order to prevail, the [appellant] must show that the evidence relative to justification, such as self-defense, raises, as a matter of law, a reasonable doubt as to his conduct being criminal." Clifton, 880 S.W.2d at 743. In determining whether an appellant acted in self-defense, a jury must determine "whether the [appellant's] belief in imminent danger was reasonable, whether the force used was reasonable, and

whether the [appellant] was without fault." State v. Thomas Eugene Lester, No. 03C01-9702-CR-00069, 1998 WL 334394, at *2 (Tenn. Crim. App. at Knoxville, June 25, 1998).

> Tenn. Code Ann. § 39-11-611(a) (1997) provides:
> A person is justified in threatening or using force against another person when and to the degree the person reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force. The person must have a reasonable belief that there is an imminent danger of death or serious bodily injury. The danger creating the belief of imminent death or serious bodily injury must be real, or honestly believed to be real at the time, and must be founded upon reasonable grounds.

See also State v. Fred Edmond Dean, No. 03C01-9508-CC-00251, 1997 WL 7550, at *6 (Tenn. Crim. App. at Knoxville, January 10, 1997). Furthermore, "once evidence is admitted supporting the defense, the state must prove beyond a reasonable doubt that the defendant did not act in self defense." State v. Amy Boyd, No. E1999-02218-CCA-R3-CD, 2000 WL 1376674, at *2 (Tenn. Crim. App. at Knoxville, September 26, 2000), perm. to appeal denied, (Tenn. 2001).

In the instant case, if the appellant was the "initial aggressor" because of his ill treatment of Mann, then "self[-]defense was not justified unless he 'abandon[ed] the encounter or clearly communicate[d] to the other the intent to do so.' Whether the appellant retreated so as to justify a self-defense claim is a factual determination for the jury." State v. Michael Ralph Alford, No. 02C01-9509-CC-00281, 1996 WL 551787, at *3 (Tenn. Crim. App. at Jackson, September 30, 1996), vacated in part on other grounds by State v. Alford, 970 S.W.2d 944 (Tenn. 1998) (alteration in original) (citations omitted).

The jury was instructed as to the elements of aggravated assault and as to the justification of self defense. Obviously, in convicting the appellant of aggravated assault, the jury discounted the appellant's claim of self-defense. See State v. Fugate, 776 S.W.2d 541, 545-46 (Tenn. Crim. App. 1988). This finding is entirely within the purview of the jury. State v. Robert Gillespie, No. 03C01-9710-CC-00455, 1999 WL 74252, at *3 (Tenn. Crim. App. at Knoxville, February 17, 1999). In discounting the appellant's claim of self-defense, the jury may have concluded that the appellant was not justified in using a knife in self-defense. See State v. James Frederick Helton, No. 03C01-9406-CR-00220, 1995 WL 689733, at *5 (Tenn. Crim. App. at Knoxville, November 22, 1995). Additionally, the jury may have concluded that the number of stab wounds indicates that the appellant was not acting in self-defense. State v. Jeffery Bradford, No. 02C01-9309-CC-00226, 1994 WL 369560, at *2 (Tenn. Crim. App. at Jackson, July 13, 1994). Accordingly, there is sufficient evidence in the record to refute the appellant's contention that he acted in self-defense. We will not now reweigh the evidence and substitute our judgment for that of the jury. Therefore, we conclude that "the evidence was sufficient for any rational trier of fact to have found beyond a reasonable doubt that the defendant did not act in self-defense." Id.

### III. Conclusion

Based upon the foregoing, we affirm the judgment of the trial court.


_____

NORMA McGEE OGLE, JUDGE